UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BARRIE DRAZEN, HARRY ROSEN** | : | **No.  09cv896 (WWE)** |
| **HOUSE, LLC, HARRY ROSEN** | : | |
| **HOUSE FOUNDATION, INC., and** | : | |
| **JOHN DOES ONE THROUGH** | : | |
| **FIFTEEN,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TOWN OF STRATFORD,** | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM OF DECISION ON SUMMARY JUDGMENT</u>**

This action stems from a zoning decision by defendant Town of Stratford concerning the Harry Rosen House.  Plaintiffs Barrie Drazen, Harry Rosen House, LLC ("HRH, LLC"), Harry Rosen House Foundation, Inc., and John Does One through Fifteen allege that defendant has violated the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA"). The parties have filed cross motions for summary judgment.  For the following reasons, the Court will deny plaintiffs' motion for summary judgment; the Court will grant defendant's motion for summary judgment on the FHA claim and ADA disparate impact claim but will deny summary judgment on the ADA disparate treatment and reasonable accommodation claims.

**BACKGROUND**

The parties have submitted statements of fact in compliance with Local Rule of Civil Procedure 56(a) with supporting exhibits and affidavits.  These materials reveal the following factual background.

In 1997, HRH, LLC purchased the a nine bedroom rooming house with a

carriage house on a property located at 859 East Broadway in Stratford, Connecticut. Barrie Drazen, the President of Harry Rosen House Foundation, named the rooming house the "Harry Rosen House" ("HRH").  Harry Rosen House Foundation leases the HRH to provide sober living opportunities within the Town of Stratford.  Each of the residents of the HRH is a person in recovery from substance abuse.

Stratford Zoning Enforcement Officer John Rusatsky describes the neighborhood where the HRH is located as "high-density" with "very congested" parking.  A train station is located nearby the HRH, and a day-care center is across the street from the HRH.

The HRH commenced operation as a sober living facility in 1998.  From 1998 to 2007, plaintiffs used the carriage house to hold weekly "twelve-step" and Alchoholics Anonymous ("AA") meetings attended by residents, alumni, sponsors and members of the public, which could amount to thirty-four or more people.  Plaintiff Drazen also attended these meetings at times.  AA meetings are offered at other locations in Stratford.

In May 2007, a fire destroyed the carriage house.  After the fire, the HRH, LLC applied for a permit to build a new structure.  The plans for rebuilding of the carriage house were required to be submitted to the Town of Stratford's Historic District Commission.  The Historic District Commission required plaintiffs to rebuild the carriage house in exact detail to recreate the original appearance.

The Town required that the Building Department also approve the carriage house plan prior to issuance of a building permit.

In September 2007, HRH LLC submitted an application for a building permit

2

stating that the requested purpose was to "rebuild pre-existing carriage house."  The
initial plan for the reconstructed carriage house included a kitchen, bathroom and
central heating and cooling.  Officer Rusatsky reviewed the initial plans for the
reconstruction of the carriage house.  He advised plaintiffs that the bathroom and
kitchen areas could not be included in the reconstruction.

Upon completion of the carriage house's construction that complied with
defendant's requirements, HRH, LLC applied for a Certificate of Occupancy ("C.O.")
and a Final Zoning Certificate of Compliance.  The application for the Certificate of
Compliance described the property as a "preexisting barn/meeting house."

Officer Rusatsky forwarded the Certificate of Compliance for the carriage house
to the Building Department with the following notation:  "To be used for storage only
owner informed any meetings in the building would be in violation of zoning."  The
Building Department issued the C.O. with the limitation that the building was "For
Storage USE ONLY, NOT APPROVED FOR MEETINGS."

The HRH, LLC appealed the limitation of the C.O. to the State Building Codes
Review Panel ("SBCRP").  The SBCRP upheld the limitation on the C.O.

In May 2008, HRH, LLC appealed the notation on the Certificate of Compliance
that the carriage house was to be used for "storage only" and that "any meetings in the
building would be violation of zoning" to the Town's Board of Zoning Appeals (the
"BZA").

At the BZA public hearing, some individuals voiced concerns over traffic, parking,
noise and the potential for a second fire at the property.  The BZA reversed the
limitation on the Certificate of Compliance, holding that the carriage house could be

3

used for meetings earlier than 9 pm attended by a number of people equal to the number of residents of the HRH.

HRH LLC requested that the BZA reconsider the limitations placed on use of the carriage house.   At a public hearing, the BZA heard from plaintiffs' counsel, Drazen, tenants of the HRH and neighbors of HRH.  In a letter dated December 4, 2008, the BZA denied HRH, LLC's petition.  HRH LLC appealed the BZA's decision to the Connecticut Superior Court but withdrew that appeal prior to a final judgment or settlement approved by the superior court.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all

4

ambiguities and draw all reasonable inferences against the moving party.  Anderson,
477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential
element of its case with respect to which it has the burden of proof, then summary
judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party
submits evidence which is "merely colorable," legally sufficient opposition to the motion
for summary judgment is not met.  Anderson, 477 U.S. at 249.  The same standard
applies for cross motions for summary judgment.

Barrie Drazen Standing

Defendant maintains that Barrie Drazen lacks standing to assert injury pursuant
to the FHA or the ADA.  Specifically, defendant argues that Drazen is not an owner or
lessor of the property.

The doctrine of Article III standing requires a litigant to demonstrate that (1) the
litigant must have suffered actual or threatened injury as a result of the illegal conduct
of the defendant, (2) the injury is fairly traceable to the challenged action, and (3) the
injury is redressable by a favorable decision.  Valley Forge Christian College v.
Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982).
Plaintiff's harm must be actual or imminent, not conjectural or hypothetical.  Port
Washington Teachers' Assoc. v. Bd. of Educ. of the Port Washington Union Free Sch.
Dist., 478 F.3d 494, 498 (2d Cir. 2007).

The carriage house property is owned by the HRH, LLC, which leases the
property to the Harry Rosen House Foundation.  Drazen created the non-profit Harry
Rosen Foundation that operates the HRH, and he donated the funds to rebuild the

5

carriage house.  The injury alleged in this instance is that defendant's zoning decisions relative to the HRH LLC's applications to rebuild the carriage house on its property violated the ADA and FHA.  Participants of the programs at the carriage house are also harmed by the zoning decisions that limit their ability to attend meetings at that location. Barrie Drazen has participated in the programs at the carriage house.  Accordingly, the Court finds that he has standing as the zoning decisions curtail his ability to participate in the carriage house programs, which represents an actual, non-conjectural harm.

FHA

Defendant argues that the carriage house is not a dwelling and is not subject to FHA protection.

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in provision of services or facilities in connection with such dwelling, because of a handicap . . . ."  42 U.S.C. § 3604(f)(2). Discrimination in "terms, conditions and privileges" includes "[l]imiting the use of privileges, services or facilities associated with a dwelling because of . . . handicap . . . of an owner, tenant or a person associated with him or her."  24 C.F.R. § 100.65(b)(4).

The FHA defines a dwelling as "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as a residence by one or more families. . . ." 42 U.S.C.  § 3602(b).  The FHA does not define the term "residence," and therefore, the Court must construe the term according to its ordinary meaning. See Asgrow v. Winterboer, 513 U.S. 179, 187 (1995).  As defined in Merriam-Webster's Online Dictionary, a residence is "the place where one actually lives as distinguished from one's domicile or a place of temporary sojourn."  Courts have held the FHA

6

applicable to homeless shelters, shelters for battered women, group homes for recovering drug addicts and alcoholics, seasonal bungalows, hospice facilities but not to lodging for transient guests such as hotels.  Villegas v. Sandy Farms, Inc., 929 F. Supp. 1324, 1327 (D. Or. 1996)(citing cases).

Plaintiffs argue that use of the carriage house is covered by the statute because the FHA reaches beyond the physical walls of the residence to the use or privileges of the facilities associated with the dwelling.  In support of their position, plaintiffs advance case law holding that parking spaces, an attached garage, and ramp installation with a storage closet represented privileges associated with a dwelling covered by the FHA. However, these cases all concern the individual inhabitant's ability to access the dwelling or residence at issue.  See, e.g., Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 335 (2d Cir. 1995) (requiring assigned parking space for individual with multiple sclerosis residing in two tower building where nearby parking was a substantial factor in resident's use and enjoyment of her dwelling); Dadian v. Village of Wilmette, 269 F.3d 831, 838 (7th Cir. 2001) (reasonable accommodation to provide exception to zoning ordinance to allow for construction of a garage attached to front of disabled resident's house); Jacobs v. Concord Village Condominium X Ass'n., Inc., 2004 WL 741384 (S.D. Fla. 2004) (requiring installation of ramp and access to storage closet for motorized tricycle for non-ambulatory resident).

The instant case resembles the facts of Kulin v. Deschutes, 872 F. Supp. 2d 1093 (D. Or. 2012), wherein the plaintiff argued that a storage warehouse on his property was covered by the FHA.  The district court considered whether the storage house constituted a residence defined as a "temporary or permanent dwelling place,

7

abode or habitation to which one intends to return as distinguished from the place of temporary sojourn or transient visit."  The storage house was not covered by the FHA because it was not plaintiff's temporary or permanent dwelling place, abode or habitation, although it facilitated plaintiff's ability to earn a living and thereby pay for his residence.  Here, the carriage house does not represent a dwelling place nor does it facilitate any individual's access for purposes of inhabiting the HRH.  Accordingly, the Court finds that the carriage house is not covered by the FHA.  The defendant's motion for summary judgment will be granted on the FHA claim.

ADA

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., prohibits discrimination by public entities based on disability, providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. The ADA requires entities to make reasonable accommodations for the disabled.  Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown, 294 F.3d 35, 45 (2d Cir. 2002). To establish discrimination under the ADA, "plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  Tsombanidis v. W. Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003).[1]  Courts apply parallel analysis to FHA and ADA claims, with the exception that the FHA applies only to a "dwelling."  Caron Foundation of Florida,

_____

[1]The parties do not dispute that municipal zoning qualifies as a public program or service.  See Tsombanidis, 352 F.3d at 574.

8

879 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012).

Disparate Treatment

Plaintiffs argue that direct evidence establishes that intentional discrimination occurred.  Defendants maintain that plaintiffs cannot establish a prima facie case or pretext.

To make out a prima facie case of disparate treatment, plaintiffs must present evidence that the animus against the protected group was a significant factor in the position taken by the municipal decision-makers or by those to whom the decision-makers were knowingly responsive.  Quad Enterprises Co., LLC v. Town of Southold, 369 Fed. Appx. 202, 207 (2d Cir. 2010).  If defendants provide a legitimate, non discriminatory reason for the decision made, plaintiffs must prove that they were intentionally discriminated against on a prohibited ground, which may occur by a substantial showing that defendant's proffered explanation was pretextual.  Reg'l Econ. Cmty. Action Program, 294 F.3d at 49.

Discriminatory intent may be inferred from a totality of the circumstances. LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 425 (2d Cir. 1995).  Factors that may be considered in evaluating an intentional discrimination claim include:  "(1) the discriminatory impact of the governmental decision; (2) the decision's historical background; (3) the specific sequence of events leading up to the challenged decision; (4) departures from the normal procedural sequences; and (5) departures from normal substantive criteria." Tsombanidis, 352 F.3d at 580.

Officer Rusatsky's limitation on the building's capacity to hold meetings raises an inference that he may have held a discriminatory animus toward use of the building for

AA meetings.  An inference also exists that the BZA was influenced by Officer Rusatsky's potentially discriminatory limitation on the Zoning Compliance Certificate when it decided that meetings could not be held after 9 pm.

This evidence establishes a prima facie case of disparate treatment.  However, to the extent that defendant sets forth that it made a legitimate zoning decision, the evidences gives rise to inference of pretext.   At the same time, plaintiffs' evidence does not compel summary judgment in their favor.   In light of disputed issues of fact, the Court will deny summary judgment.

<u>Reasonable Accommodation</u>

A municipality discriminates in violation of the ADA if it refuses to make a reasonable accommodation necessary to avoid discrimination on the basis of disability. <u>See</u> <u>Mary Jo C. v. New York State and Local Retirement System</u>, 2013 WL 322879, *5 (2d Cir. 2013); 42 U.S.C. § 12131(2); 28 C.F.R. § 35.130(b)(7).  "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity."  28 C.F.R. § 35.130(b)(7).

The determination of whether a particular modification is "reasonable" is a fact-specific inquiry that considers, <u>inter alia</u>, the effectiveness of the modification in light of the nature of the disability in question and the cost to the relevant organization.  <u>Staron v. McDonald's Corp.</u>, 51 F.3d 353, 356 (2d Cir. 1995). In the zoning context, a municipality may show that a modification to its policy is "unreasonable if it is so at odds with the purpose behind the rule that it would be a fundamental and unreasonable

change." <u>Wisconsin Comty. Svcs., Inc. v. City of Milwaukee</u>, 465 F.3d 737, 752 (7th Cir. 2006).

Defendant argues that plaintiffs' request for accommodation is not reasonable because such accommodation would undermine the Town's existing zoning and building regulations.  It maintains that allowing large public meetings at the carriage house would undermine the purpose of the Town's zoning regulations and would be incompatible with the neighborhood's residential use due to parking and noise issues. It asserts further that alternate locations exist for such meetings in the area and that the limitation placed upon the carriage house meetings is reasonable.  However, defendant's assertion that an accommodation would undermine the existing purposes of the zoning regulations appears conclusory without evidentiary support.  Thus, disputed issues of fact exist concerning defendant's provision of a reasonable accommodation.  Summary judgment in favor of either party on this claim will be denied.[2]

Disparate Impact

Defendant asserts that to the extent that plaintiff has brought a disparate impact claim, such claim fails for lack evidentiary support.  The Court notes that plaintiffs' papers have not responded to defendant's argument.

A successful disparate impact claim involves a comparison between groups

---

[2]Plaintiffs argue that defendant bears a burden of proof rather than persuasion on the reasonableness of the accommodation pursuant to Title II of the ADA.  <u>See</u> <u>Pascuiti v. New York Yankees</u>, 87 F. Supp. 2d 221, 223  (S.D.N.Y. 1999).  However, in this instance, denial of summary judgment is appropriate regardless of which party bears a burden of proof or persuasion.

affected and unaffected by a facially neutral policy.  <u>Tsombanidis</u>, 352 F.3d at 575.

Plaintiffs have neither argued that a disparate impact violation has occurred or

submitted evidence in support thereof.  Accordingly, the Court finds that summary

judgment is appropriate on such claim to the extent that it has been asserted by

plaintiffs' complaint.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment [doc. #53]

is GRANTED as to the FHA claim and ADA disparate impact; the defendant's motion

for summary judgment on the ADA disparate treatment and reasonable accommodation

are DENIED.  Plaintiff's motion for summary judgment [doc. #54] is DENIED.


Dated this ___28th___ day of March, 2013 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE